IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN BROOM, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SAINTS JOHN NEWUMAN & | : | |
| MARIA GORETTI CATHOLIC | : | |
| HIGH SCHOOL, et al. | : | NO. 09-5366 |

McLaughlin, J.                                                                 June 24, 2010

      This is a suit on behalf of a high school student of Brazilian ancestry alleging race and ethnic background discrimination at his former school. There are three pending motions in this case: the plaintiffs' motion to amend their complaint, the defendants' motion for summary judgment, and the plaintiffs' motion to stay consideration of the summary judgment motion until a decision on the motion to amend. For the reasons that follow, the Court will deny all three motions.

      The plaintiffs here are John and Rosana Broom, who are suing individually and on behalf of their son, Michael Broom. The three defendants are the teacher who allegedly committed the discriminatory conduct, Louis Valenti; the Catholic school that Michael Broom attended, Saints John Neumann & Maria Goretti Catholic High School (the "school"); and the Archdiocese of Philadelphia (the "Archdiocese"), which owns the school.

      In their complaint, the plaintiffs allege that Michael Broom was the only Latin American student at the school. He

enrolled in January 2008 and was assigned to defendant Valenti's theology class.  Over the next semester, the plaintiffs allege that Valenti continually made jokes at Michael Broom's expense and created a hostile work environment.  One object of Valenti's remarks was Broom's long hair (which satisfied the school dress code).  Among the ways in which Valenti made fun of Broom's hair was by allegedly telling the class that Brazilians don't wear clothes but instead use their long hair to cover their bodies.  Valenti also allegedly made derogatory remarks about Brazil, including saying that the country was ugly.

The plaintiffs state that they complained to the school's principal about Valenti's conduct and were told that Valenti had had similar problems at other schools.  Broom's parents were dissatisfied with the school's response and complained to the Archdiocese.  The plaintiffs allege that neither the school nor the Archdiocese did anything about Valenti, and, as a result, Michael Broom's grades fell, he became disillusioned with religion, and ultimately transferred to public school.

The plaintiffs' complaint brings claims against all defendants for discrimination under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI"); under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 ("Title IX"); and under The Civil Rights Act of 1866, 42 U.S.C. § 1981

("§ 1981"). Compl. ¶ 1. As relief, the plaintiffs seek compensatory, punitive, and statutory damages, plus unspecified injunctive relief.[1]

On April 13, 2010, the plaintiffs filed a motion seeking leave to file an amended complaint.[2] The motion states that the plaintiffs have been served by the defendants with a proposed Rule 11 motion that charges that the plaintiffs have no factual basis to allege (as they did in their initial complaint) that the defendants were the recipients of federal funds. To take advantage of the safe harbor provisions of Rule 11, the plaintiffs say that they seek to file an amended complaint bringing claims only for "§ 1981, § 1983, and equitable relief." Although the motion did not include a proposed amended complaint, the plaintiffs subsequently filed one with the Court on April 30, 2010 (Docket No. 26). The proposed amended complaint makes clear

---

[1] In their motion for summary judgment, the defendants construe the plaintiffs' complaint as also bringing claims under § 1983. The complaint, however nowhere refers to § 1983 and states plainly that this action "arises under Title VI of the Civil Rights Act of 1964 . . . Title IX of the Education Amendments of 1972 . . . and The Civil Rights Act of 1866, 42 U.S.C. § 1981 . . ." Compl. ¶ 1.

[2] The plaintiffs required leave of court under Fed. R. Civ. P. 15(a) because their request to amend came more than 21 days after they served their initial complaint and more than 21 days after the only answer filed to the complaint, that of defendants Saints John Neumann & Maria Goretti Catholic High School and the Archdiocese of Philadelphia. Defendant Louis Valenti was granted an extension to file his answer until after the Court resolved the plaintiffs' motion to amend.

that the plaintiffs seek to drop their claims under Title VI and Title IX (which, by their terms, apply only to recipients of federal funds) and bring claims against the defendants only under § 1983 and § 1981.  The proposed amended complaint does not contain a claim for equitable relief, and the plaintiffs have subsequently made clear that they are withdrawing that claim. See Pl. Reply Mem. (Docket No. 29) at 1.

In addition to filing an opposition to the motion to amend, the defendants also filed a motion for summary judgment on the claims in the initial complaint.  In both filings, the defendants argue that the plaintiffs cannot bring claims under Title VI and Title IX because none of the defendants is a recipient of federal funds, that they cannot bring claims under § 1983 because none of the defendants is a state actor, and that they cannot bring claims under § 1981 because that statute does not reach discrimination on the basis of national origin.  The only evidentiary material attached to the motion for summary judgment is a letter to one of the plaintiffs from the U.S. Department of Education confirming that neither the Archdiocese nor the school receives federal funds.

The plaintiffs did not file an opposition to the defendants' motion for summary judgment, but instead filed a motion for a stay, asking the Court to put off considering the summary judgment motion until a decision on the motion to amend

and asking, in the alternative, for an unspecified enlargement of time to respond.  The plaintiffs, however, addressed the arguments raised in the defendants' summary judgment motion in their reply brief in support of their motion to amend, arguing that they could state valid claims against all defendants under both § 1981 and § 1983.

The Court will now decide all three motions.

As a threshold matter, the Court recognizes that the plaintiffs have stated in their briefing that they will not be pursuing pursue their Title VI and Title IX claims or their claims for equitable relief.  The Court will therefore memorialize in its Order resolving these motions that these claims have been voluntarily dismissed against all defendants.

The Court will deny the plaintiffs' motion to amend. In general, a court should "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A request to amend may be denied, however, when the amendment would be futile. Hill v. City of Scranton, 411 F.3d 118, 134 (3d Cir. 2005).  An amendment is futile when it would not withstand a motion to dismiss.  Garvin v. City of Philadelphia, 354 F.3d 215, 222 (3d Cir. 2003).

Here, the new claim to be added in the amended complaint is one against all defendants under § 1983.  One of the required elements of a § 1983 claim is that a defendant act

"under color of law." Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009). The "under color of law" requirement means that merely private conduct, no matter how discriminatory or wrongful does not violate § 1983. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999).

Determining whether a defendant acted under color of law depends on whether "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." Leshko v. Servis, 423 F.3d 337, 339 (3d Cir. 2005). This inquiry involves three broad issues: whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has insinuated itself into a position of interdependence with the acting party so that it is a joint participant in the challenged activity. Kach, 589 F.3d at 646.

Although determining whether a defendant acted under color of law is a fact-specific inquiry, courts have found in varying contexts that private schools are not state actors subject to § 1983. See, e.g., Rendell-Baker v. Kohn, 457 U.S. 830 (1982) (finding a private school was not a state actor for purposes of § 1983, despite its receiving a large proportion of

its budget from state funds, being subject to extensive state regulation, and serving a public function).

Here, the plaintiffs have provided no factual allegations in their amended complaint to support finding any of the defendants to be a state actor. In both their initial memorandum and their reply brief, the only argument that the plaintiffs make to find the school to be a state actor is that it offers open admission to the public. The authority upon which the plaintiffs rely for their argument, however, refutes it and instead establishes that being open to the public does not turn a private party into a state actor subject to § 1983 liability.

The plaintiffs cite Marsh v. Alabama, 326 U.S. 501 (1946) and Lloyd Corp., Ltd. v. Tanner, 407 U.S. 551 (1972). In Marsh, the United States Supreme Court held that the operator of a "company town" could be subject to the restrictions of the First Amendment. In Lloyd, the Court refused to extend Marsh's holding to a privately-owned shopping mall, specifically rejecting the argument that the privately-owned mall could be considered a state actor subject to the First Amendment on the ground that it was "open to the public." Id. at 565-66.[3]

---

[3] The other cases cited by the plaintiffs are similarly inapposite. In Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1267 (3d Cir. 1994), a lessor and a law firm using state procedures to execute on a judgment were found to be state actors because they intentionally invoked the coercive power of the state. Similarly, in Grillo v. BA Mortgage, LLC, 2004 WL 2250974 (E.D. Pa. Oct. 4, 2004), dthe efendants were found to be

Because the plaintiffs have provided no factual allegations that would support a finding that any of the defendants acted "under color of law," the plaintiffs have not established that their proposed § 1983 claim could survive a motion to dismiss. The Court will therefore deny their request to amend the complaint on grounds of futility.

The Court will also deny the defendants' motion for summary judgment. The defendants argue that they are entitled to judgment on the plaintiffs' Title VI and Title IX claims because none of the defendants is a recipient of federal funds. This argument is moot because the plaintiffs have withdrawn those claims. Also moot is the defendants' argument that the defendants are entitled to judgment on the plaintiffs' § 1983 claims because the defendants are not state actors. Because the Court has denied the plaintiffs' motion to amend, there are no § 1983 claims in the complaint.

The only claims remaining at issue are the § 1981 claims against the defendants. The defendants argue that they are entitled to summary judgment on these claims because the plaintiffs' allegations amount only to claims of national origin discrimination, which are not covered by § 1981. They also argue

---

state actors when they "used Pennsylvania law to cause the issuance of a writ of execution for the sale of plaintiffs' home." Id. at *6. Unlike Jordan and Grillo, this case does not involve the use of state coercive power by the defendants.

that the alleged adverse acts suffered by Michael Broom are outside the scope of § 1981.

In pertinent part, § 1981 ensures that all persons within the jurisdiction of the United States have "the same right, in every State and Territory . . . to make and enforce contracts . . . as is enjoyed by white citizens." § 1981(a). Although the statute does not use the word race, it is construed as prohibiting racial discrimination in the making and enforcement of private contracts. Runyon v. McCrary, 427 U.S. 160, 168 (1976).

Because § 1981 was intended to protect against discrimination based on race, it does not provide a remedy to plaintiffs discriminated against "solely on the place or nation of [their] origin." St. Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987); see also Bennun v. Rutgers State Univ., 941 F.2d 154, 172 (3d Cir. 1991) (a claim of discrimination based "solely on [a plaintiff's] national origin . . . would not be sufficient for a § 1981 claim under Al-Khazraji"). At the same time, because the concept of "race" was different in the mid-19th Century when § 1981 was enacted, the statute protects, not just plaintiffs subjected to racial discrimination as it is understood today, but also plaintiffs "who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." Al-Khazraji, 481 U.S. at 613 (allowing a

§ 1981 claim by a plaintiff alleging discrimination because of Arab ancestry).

The defendants are therefore correct that § 1981 does not protect against national origin discrimination. The plaintiffs, however, have alleged that Michael Broom was discriminated against because of his "race and/or nationality." Compl. ¶ 50. The specific allegations of the complaint, which at this early stage of the litigation are not contradicted by discovery, include statements by defendant Valenti, such as his alleged comment about Brazilians being hairy, that appear to refer to Michael Boom's ethnicity or ancestry, not just his nation of origin. At this early stage of this litigation, these allegations are sufficient to maintain a claim under § 1981.

The defendants also argue that the plaintiffs have failed to state a § 1981 claim because there are no factual allegations in the complaint that could establish that the plaintiffs were deprived of their right to "make and enforce contracts." This argument is misplaced.

Section 1981 was amended in 1991 to add a subsection defining the term "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b). This amendment broadened the scope of § 1981 to reach harassing

conduct that occurs after the formation of a contract and permits claims under the statute for creating a racially hostile environment. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 372-73 (2004). The plaintiffs' allegations that Michael Broom was subjected to a hostile environment by his teacher because of his Brazilian ancestry therefore fall squarely within the scope of § 1981 as amended.

Having found that it will deny the plaintiffs' motion to amend and the defendants' motion for summary judgment, the Court will also deny, as moot, the plaintiffs' motion to stay consideration of the summary judgment motion until a decision on the motion to amend.

An appropriate Order will be issued separately.